Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1122 | **DATE** | 8/14/2001 |
| **CASE TITLE** | USA, ex rel. Arter Clay vs. Stephen McEvers | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]  Enter Memorandum Opinion and Order.  Clay's motion for leave to file an amended petition (Doc. No. 16-1, 16-2) is granted.  Clay's motion for appointment of counsel is denied as moot (Doc. No. 18) in light of this court's decision to deny Clay's petition for writ of habeas corpus (Doc. No. 17 and Doc. No. 1). |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 15 2001 | |
| | Notified counsel by telephone. | date docketed | **21** |
| | Docketing to mail notices. | 15 | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/14/2001 | |
| | | date mailed notice | |
| ETV | courtroom deputy's initials | ETV | |
| | | mailing deputy initials | |

FB-7
FILED FOR DOCKETING
01 AUG 15 AM 8: 42

Date/time received in central Clerk's Office

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

AUG 1 5 2001

UNITED STATES OF AMERICA, ex rel. )
ARTER CLAY, )
           )
           Petitioner, )
           )
       v. )       No. 99 C 1122
           )
STEPHEN McEVERS, )       Judge Rebecca R. Pallmeyer
           )
           Respondent. )

## MEMORANDUM OPINION AND ORDER

Following a jury trial in the Circuit Court of Cook County, Petitioner Arter Clay was convicted of possession with intent to deliver cocaine and sentenced to 20 years imprisonment. Petitioner has pursued his state court remedies without success. Now incarcerated in the Jacksonville Correctional Center, Petitioner brings this petition for federal habeas corpus pursuant to 28 U.S.C. § 2254, raising various claims for relief. Because Clay's claims either are procedurally defaulted or fail on their merits, his petition for writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

At trial, Officer Vincent Humphrey and Officer Joel Howard testified that on

---

[1] In reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254, a federal court presumes that the facts found by state courts are correct. 28 U.S.C. § 2254 (e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Smith v. Fairman*, 862 F.2d 630, 632 (7th Cir. 1988). A petitioner has the burden to establish by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel. Green v. Greer*, 667 F.2d 585, 589 n. 6 (7th Cir. 1981). Clay does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth in *People v. Clay*, No. 1-95-1160, slip op. (Ill. App. Ct. Oct. 23, 1996).

21

July 27, 1993, they saw a drug deal taking place in the parking lot of Paddock's Restaurant, located on North Avenue and Elston Street. (Exhibit B, Respondent's Answer, *People v. Clay*, No. 1-95-1160, slip op. at 1 (Ill. App. Ct. Oct. 23, 1996)(hereinafter "Exhibit B"), at 2.) Both Humphrey and Howard testified that they witnessed Petitioner give an unidentified male a shoebox, later found to contain money, in exchange for a brown paper bag. (*Id.* at 2-3.) The officers then walked past the men, got into their unmarked squad car, and drove back into the parking lot. (*Id.* at 3.) Once in the parking lot, Howard identified himself to Petitioner as a police officer. (*Id.*) According to the police, Petitioner then dropped the brown bag and began running. (*Id.*) Officer Howard caught Petitioner and arrested him. (*Id.*)

The brown bag contained two bags of white powder. (Exhibit A, Respondent's Answer, Plaintiff-Appellee's Brief, Illinois Appellate Court (hereinafter "Plaintiff-Appellee's Brief"), at 7.) Arthur Kruski, a chemist for the Chicago Police Department, testified at trial that the powder weighed a total of 422.74 grams. (*Id.*) A purity test revealed that the white powder was 3% cocaine. (*Id.*) Officer Karen Morrisette, an expert in the area of narcotic sales, testified that a 20% purity level is normal in quantities of a quarter gram, while the normal purity level in a pound of cocaine is between 65% and 90%. (Exhibit C, Respondent's Answer, Clay's Petition for Leave to Appeal (hereinafter "PLA"), at 6.)

The cocaine that was in the bag was introduced at trial. (*See* Exhibit B, at 3, 4.) Officer Howard testified that he kept possession of the brown paper bag until he

arrived at the police station at approximately 2:00 p.m. (Plaintiff-Appellee's Brief, at 14.) At that time, he gave the bag to Officer Humphrey, who weighed the powder, heat sealed it in an evidence envelope and then put it in a safe. (*Id.*; PLA at 5.) Officer Humphrey admitted that he did not attach an inventory slip to the evidence until the next morning and his supervising sergeant did not sign that slip until later that evening, at 9:40 pm. (Plaintiff-Appellee's Brief, at 14; PLA at 5-6.)

Defendant also testified on his behalf at trial. (Plaintiff-Appellee's Brief, at 7.) According to Defendant, on July 27, 1993, he was eating at the Paddock Restaurant, where he briefly spoke to a friend of his named "Tee." (*Id.*) When he left the restaurant, he witnessed Tee speaking to a second, unknown individual. (*Id.*) As Petitioner walked to his car, the police drove onto the scene and arrested him. (*Id.* at 7-8.) As he was being arrested, he testified that he saw the second, unknown individual on the ground with a shoebox in front of him, but this individual was allowed to leave with the shoebox. (*Id.* at 8.) Once in custody, at around 5:00 p.m., Petitioner claimed that the police officers came to see him in his cell. (Exhibit B, at 4; PLA, at 7.) He testified that the officers brought two bags with them, presumably containing the drugs they found. (Plaintiff-Appellee's Brief, at 8; PLA at 7.) Petitioner testified that the officers tried to use these bags as leverage to make him give up some names the police could use. (*Id.*)

During closing arguments, the prosecutor made a few statements relating to children and drugs, including: "when considering whether Mr. Greedy cares if [the

3

cocaine's purity level is] 3% or 60%, just consider whether he cares what an 8th grader

thinks when he buys 3% cocaine." (Exhibit B, at 5.) The prosecutor also stated, "you

watch the news, selling drugs at Rock and Roll McDonald's, you read the newspaper,

5th grader caught with crack cocaine." (*Id.* at 5.) The trial court sustained defense

counsel's objections to both of these comments. (*Id.* at 5.)

The prosecutor also commented on the credibility of the witnesses and the fact

that the state's witnesses were police officers. (PLA, at 18.) In one such comment, the

prosecutor stated that Petitioner was trying to make the jury believe that two officers

lied, explaining, "[t]hat's what he's telling you ladies and gentlemen. That these men

who have been Chicago police officers for eight years came into this courtroom in their

suits and ties with [this] story for you." (*Id.*) Later, the prosecutor stated, "[these] are

officers who are go-getters, ladies and gentlemen, they are officers we should be proud

to have working in our community" and added "if you look at the way they testified

yesterday, they were . . . honest, articulate, well dressed and proud of their work."

(*Id.*)[2]

After deliberations, the jury convicted Petitioner of possession with intent to

deliver cocaine and the trial judge sentenced him to 20 years imprisonment. (Exhibit

B, at 1.)

## PROCEDURAL HISTORY

Petitioner filed a timely appeal to the Illinois Appellate Court, First District,

---

[2]     It is not clear from the record whether defense counsel objected to these
comments, but it is clear that Clay did not allege the error in his post-trial motion.

challenging:

> (1) the sufficiency of the evidence proving him guilty beyond a reasonable doubt; (2) the admissibility of the cocaine into evidence; (3) the prosecutor's comments during closing arguments as improper and prejudicial; and (4) the consideration of his prior conviction as an aggravating factor in his sentencing hearing.

(Exhibit B, at 1.) On October 23, 1996, the Appellate Court affirmed Petitioner's conviction and sentence. (*Id.* at 6.)

Petitioner filed a timely petition for leave to appeal to the Illinois Supreme Court, raising the following issues: (1) the evidence was insufficient to find him guilty beyond a reasonable doubt; (2) the trial court erred in admitting the cocaine into evidence; and (3) the misconduct of the prosecutor deprived him of a fair trial. (PLA, at 1.) The Illinois Supreme Court denied the petition for leave to appeal on January 29, 1997. (Exhibit D, Respondent's Answer, *People v. Clay*, 171 Ill. 2d 570, 677 N.E.2d 967 (Table Ill. 1997).)

On July 28, 1997, Petitioner filed a petition for post-conviction relief in the Circuit Court of Cook County, alleging: (1) he was deprived of his constitutional right to a fair trial when the police officers who testified at his trial committed perjury; (2) he was deprived of his constitutional right to a fair trial by the "purposeful prosecutorial misconduct of the States Attorney"; and (3) he was deprived of his constitutional right to a fair sentencing hearing because the trial court relied on an old conviction to enhance the sentence. (Exhibit E, Respondent's Answer, Petition for Post-Conviction Relief, No. 93 CR 19380.) The Circuit Court of Cook County dismissed the petition as frivolous on October 8, 1997. (*See* Exhibit F, Respondent's Answer,

5

Motion to Withdraw as Counsel, at 2.)

Petitioner appealed the dismissal of his post-conviction petition to the Illinois Appellate Court. (*See* Exhibit H, Respondent's Answer, *People v.* Clay, No. 1-97-4268, at 1.) Petitioner's appointed counsel filed a motion requesting leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (*See* Exhibit F, Respondent's Answer.) Petitioner filed a response to that motion, claiming that he had meritorious issues to raise on post-conviction but he was not able to present those issues properly to the trial court because he received ineffective assistance of counsel. (Exhibit G, Respondent's Answer, at 2.) In support of his response, Petitioner attached his own affidavit and affidavits from two men who claim that they, and not Clay, were involved in the drug transaction of which he was convicted. (*Id.*)[3]

On July 28, 1998, the court found that Petitioner had no issues of arguable merit to present on appeal and, therefore, granted appointed counsel's *Finley* motion for leave to withdraw and affirmed the trial court's dismissal of Clay's post-conviction petition. (Exhibit H, at 2.) Specifically, the court found that "Defendant's sentencing issue was foreclosed under the doctrine of *res judicata* since it was considered and rejected on direct appeal," his "allegations of prosecutorial misconduct were either waived or were

---

[3]     Respondent has provided this court with a copy of Petitioner's response to his counsel's *Finley* motion, but these affidavits were not attached to that petition. Instead, this court's knowledge of the affidavits comes solely from the Illinois Appellate Court's order granting counsel's *Finley* motion and affirming the trial court's denial of Petitioner's post-conviction petition. In his habeas petition, Clay has not raised any actual innocence claim based on these affidavits, nor has he attached the affidavits of the two men who he claims were involved in the drug deal. The court concludes that neither these affidavits, nor any claim of actual innocence, is presented in this petition.

otherwise insufficient," and, finally, that his perjury claim "was . . . insufficient to warrant the relief requested" because the attached affidavits "failed to make the requisite showing to establish his claim." (*Id.* at 2-3.)

Petitioner subsequently filed a Petition for Leave to Appeal his post-conviction petition on October 1, 1998, raising the same three issues as he raised in his original post-conviction petition. (*See* Exhibit I, Respondent's Answer, at 2.) That petition was denied by the Illinois Supreme Court on December 2, 1998. (*People v. Clay*, 181 Ill. 2d 577, 706 N.E.2d 499 (Table Ill 1998).)

On June 4, 1999, Petitioner filed an amended petition for writ of habeas corpus,[4] raising the following issues: (1) the evidence was not sufficient to prove Petitioner guilty beyond a reasonable doubt; (2) the trial court erred in admitting cocaine into evidence; (3) the prosecutor's closing argument deprived Petitioner of his right to a fair trial; (4) the trial court erred in considering a prior conviction from 1972 during sentencing; and (5) his trial counsel was ineffective for failing to impeach the police officers at trial and for failing to call certain witnesses during the trial.[5] (Amended

---

[4]     Petitioner originally filed his habeas petition on February 18, 1999, but this court dismissed that petition on June 1, 1999, for failing to provide any facts to support the grounds for relief. (Doc. No. 7.) Petitioner was then given 30 days to submit an amended petition.

[5]     In his habeas petition, Petitioner listed the ineffective assistance of counsel claim as two separate issues. In addition, he added a sixth ground of relief that is so unintelligible that the court cannot decipher what claim Petitioner meant to raise. This claim reads in part, "In sentencing Defendant he himself or his lawyer in the transcript never agreed to 12 to 40 year sentence." The claim also mentions the fact that the trial judge added 8 years to Petitioner's sentence after considering the
(continued...)

Petition for Writ of Habeas Corpus, at 5-6.)

On January 23, 2001, Petitioner filed a motion to amend his petition once again. In this petition, he raised the following two additional claims: (1) the quantity of cocaine was inaccurate and was not proven beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (2) the trial court should not have been permitted to apply prior convictions as sentencing factors when the convictions occurred 10 years prior to the instant conviction and, further, under *Apprendi*, those convictions must be alleged in the indictment.

## DISCUSSION

### A.    Standard of Review

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court is governed by § 2254 of the Anti-Terrorism and Effective Death Penalty Act. 28 U.S.C. § 2254. Under § 2254, a prisoner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution. *Id.*

The federal court will not grant a writ of habeas corpus with respect to any claim

---

[5](...continued)
state's attorney's comments. According to Petitioner, the state's attorney wrongly told the judge that Petitioner had lied at trial.

Even construing this claim liberally, it does not state any constitutional violation and was not raised at the state level. As to the first part of the claim, because Petitioner did not plead guilty, but was, instead found guilty after a jury trial, his unwillingness to agree to a particular sentence is not relevant. As to the second part of the claim, the state's attorney is, of course, permitted to make statements to the judge at sentencing. For these reasons, this opinion will not consider this last claim.

that was adjudicated on the merits in state court proceedings unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(1) & (2). The "contrary to" provision refers to questions of law, and on such questions, a federal court makes a de novo review. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). The "unreasonable application" exception pertains to mixed questions of law and fact. *Id.* at 870. A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer v. Peters*, 114 F.3d 1435, 1442 (7th Cir. 1997). A state court's decision must stand "if it is one of several equally plausible outcomes." *Ashford v. Gilmore*, 167 F.3d 1130, 1134 (7th Cir. 1999).

Additionally, a federal court cannot reach the merits of a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default, *Moleterno v. Nelson*, 114 F.3d 629, 633-34 (7th Cir. 1997), or can show: (1) cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) that refusal to consider the defaulted claim would result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 120 S. Ct. 1587, 1591 (2000); *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

## B. Petitioner's Second Amended Petition

As an initial matter, this court must address Petitioner's motion to once again amend his petition. (Doc. No. 16.) Federal Rule of Civil Procedure 15(a) provides that even after the respondent has filed an answer, and the petitioner's absolute right to amend has lapsed, petitioner may amend his petition by leave of court or by written consent of the adverse party. FED.R.CIV.P. 15(a); *see also Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Leave to amend a complaint should be freely granted when justice so requires as long as there is no "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)(citing FED.R.CIV.P. 15(a)); *see also Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001).

Respondent contends that Clay, by his amended petition, is attempting to bypass AEDPA's one year statute of limitations. Because the court finds, however, that the two additional claims Petitioner has raised are similar to two of the five claims he raised in his last habeas petition, the court will allow Clay to amend his petition. Additionally, because the court finds that neither of Petitioner's additional claims provides grounds for granting habeas relief, the court has not requested an answer to these claims from Respondent and, therefore, Respondent is not prejudiced by this court's decision to allow Petitioner to amend his petition. Finally, whether Petitioner meant to have these additional two claims replace his other claims is not entirely clear.

An amended petition would normally supercede the claims raised in any prior petition, but, in an effort to give a final resolution to all of Petitioner's claims at once, the court will address each of his claims below.

## C.    Sufficiency of the Evidence

Petitioner first claims that the evidence against him was "so improbable and unsatisfactory" that he could not have been convicted of intent to deliver beyond a reasonable doubt.[6] The standard for federal court review of sufficiency of the evidence is set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under *Jackson*, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In applying *Jackson*, deference is given to the trier of fact; reviewing courts may not make their own credibility determinations, substitute judgments for the trier of fact, or reweigh the evidence. *Ford v. Ahitow*, 104 F.3d 926, 935 (7th Cir. 1997); *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990).

Under 28 U.S.C. § 2254, the only question before this court is whether the state's application of *Jackson* was reasonable. *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997) (holding that federal review of this claim "now turns on whether the state court

---

[6]    In the same claim, Petitioner states "[Defendant's] due process of the fifth and fourteenth amendment to prove all elements of an offense beyond a reasonable doubt, search and seizure, and entrapment." He then lists a number of problems with the trial. It is not clear what Petitioner meant by adding the words "search and seizure" and "entrapment" but because neither claim has been raised before this time, nor are there any grounds for such claims, the court will construe this first claim as one challenging the sufficiency of the evidence used to convict Petitioner.

provided fair process and engaged in reasoned, good-faith decision making when applying *Jackson's* 'no rational trier of fact' test"). In this case, the Illinois Appellate Court applied the standard set forth in *People v. Torres*, 269 Ill. App. 3d 339, 346, 645 N.E.2d 1018, 1023 (2d Dist. 1995) and *People v. Sutherland*, 155 Ill. 2d 1, 17, 610 N.E.2d 1, 8 (1992), for determining the sufficiency of the evidence, both of which articulate the same standard established in *Jackson*.

After reviewing the record, the court determined that "any rational trier of fact could have found defendant guilty beyond a reasonable doubt." *People v. Clay*, No. 1-95-1160, slip op. at 2 (Ill. App. Ct. Oct. 23, 1996). As the court explained, the main issue at trial was the credibility of the witnesses. *Id*. Police officers Humphrey and Howard testified that they saw Petitioner give an unidentified male a shoebox of money in exchange for a brown paper bag, and that, before they arrested Petitioner, they saw him drop a bag containing white powder that was later determined to be cocaine. *Id*. at 2-3. Petitioner testified on his behalf, denying that he had anything to do with the drug deal. *Id*. As the Illinois Appellate Court explained, it was up to the jury to determine who they found credible; if they found the officers' testimony credible, as they did, they would be able to find Petitioner guilty beyond a reasonable doubt. In making its decision that the jury could have found Petitioner guilty beyond a reasonable doubt, the court reiterated the *Jackson* principle that "it is the duty of the trier-of-fact, not of the reviewing court, to assess the credibility of the witnesses." *Id*. Because the Illinois Appellate Court applied the law as established by the Supreme

Court, this court will not now upset that ruling on habeas review.

### D. Cocaine as Evidence and as an Element of the Crime

In his first amended petition, Clay claims that the cocaine should not have been admitted at trial because the State did not properly establish the chain of custody for the evidence. In his second amended petition, Clay also claims that the amount of cocaine was inaccurate and, further, that pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the amount of cocaine at issue was an element of the crime and therefore should have been alleged in the indictment and submitted to the jury to find beyond a reasonable doubt. The court will address each of these claims below.

### 1. Chain of Custody

Petitioner first claims that the chain of custody for the cocaine admitted at his trial was not properly established and points to the fact that the inventory slip was not attached to the cocaine until the morning after it was recovered and was not signed by a supervisor until later that day. Until that time, Petitioner alleges that "the officers could have had [the] evidence tampered with while [it] was in their custody [and] not put in a safe after the arrest for 12-14 hours."

Evidentiary rulings of state courts are normally not subject to habeas review. *Dressler v. McCaughtry*, 238 F.3d 908, 918 (7th Cir. 2001); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7thCir. 1990). Instead, federal review of state evidentiary rulings under § 2254 is limited to cases where error results in a denial of a specific constitutional right. *Zamora v. Pierson*, No. 00 C 1151, 2001 WL 315199, at *3 (N.D. Ill. Mar. 30, 2001). Even erroneous evidentiary rulings are normally not cognizable for habeas

review, unless the ruling "was incorrect and so prejudicial that it violated [petitioner's] due process rights to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *United States v. Roth*, No. 98 C 7230, 2001 WL 755433, at *5 (N.D. Ill. July 2, 2001)(citing *Dressler*, 238 F.3d at 914).

On direct review, the Illinois Appellate Court determined that, in fact, the State had established a proper chain of custody for the admission of the cocaine into evidence. Exhibit B, at 3. The court pointed out that the trial court had broad discretion in determining the admissibility of evidence and that, in order to establish a proper chain of custody, "the State need not disprove every possibility that the evidence was tampered with. Rather, the State need only show that it was reasonably probable that the evidence remained unchanged in any important respect, or was not substituted." *Id.* at 3. The court found the State had met its burden because Officer Humphrey testified that he put the cocaine in a safe place at 2 p.m., and attached the inventory sheet to the drugs the next morning. *Id.* at 3-4. In between this time, the cocaine had been weighed and heat sealed in an envelope. *Id.* at 4. The court therefore found that the time it took for the inventory slip to be attached was irrelevant, as long as the evidence remained in a safe place. *Id.* The court also noted that Petitioner failed to introduce actual evidence that the cocaine had been tampered with or substituted and, absent such evidence, the State's showing that the evidence probably was not tampered with was sufficient. *Id.* at 3. The court therefore found that the admission of this evidence did not deprive Clay of a fair trial.

Clay offers this court no reason to find that this conclusion was an unreasonable application of federal law, nor does he offer a reason to disagree with the state court's analysis. As such, the admission of the cocaine does not present any grounds for habeas relief.

### 2.    **Admissibility of Cocaine:** *Apprendi* **Claim**

Petitioner also claims, in his amended petition, that "the quantity of cocaine as evidence was inaccurate, and is an element of the offense that must be charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt" but that "[i]n this case, the jury made no special finding of the quantity or otherwise," as they must, pursuant to *Apprendi v. New Jersey*, 520 U.S. 466 (2000). Petitioner does not, however, explain why the quantity was inaccurate. At trial, Arthur Kruski, a Chicago Police Department chemist, testified that the powder weighed a total of 422.74 grams, and a purity test revealed that the white powder was 3% cocaine. Petitioner does not allege any facts which would call Kruski's testimony into question. Instead, the court will assume that by saying the quantity of the cocaine was "inaccurate" Petitioner meant to raise his chain of custody argument, which has already been addressed by this court. The court will, therefore, turn to Petitioner's *Apprendi* claim.

Petitioner failed to raise this claim on either direct or collateral appeal in the state courts. Leaving aside that this failure would be a sufficient reason for this court to find that Petitioner is not entitled to habeas relief on this claim, Petitioner's claim also must fail because *Apprendi* does not apply to his case.

In *Apprendi*, the Supreme Court held that any fact that increases the penalty

15

for a crime beyond the statutory maximum, other than the fact of a prior conviction, must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 2354-2366. In Petitioner's case, he was convicted of possession of a controlled substance with intent to deliver. *People v. Clay*, No. 1-95-1160, slip op. at 6 (Ill. App. Ct. Oct. 23, 1996). According to the Illinois Appellate Court, "[t]he determinate sentence [for this crime] shall be not less than 12 years and not more than 50 years." *Id.* Because Petitioner was sentenced to 20 years' imprisonment, he was not sentenced to an extended term sentence as he suggests and, therefore, *Apprendi* does not apply to this claim. *See also United States v. Jones*, 245 F.3d 645, 646 (7th Cir. 2001)(where the court failed to properly instruct the jury as to the government's burden to prove both the type and quantity of the controlled substance alleged in the indictment, Defendant's conviction was not affected by *Apprendi* because Defendant received a sentence below the statutory maximum penalty); *Talbott v. Indiana*, 226 F.3d 866, 869-70 (7th Cir. 2000)("*Apprendi* does not affect the holding of *Edwards v. United States*, 523 U.S. 511 . . . (1998), that the judge alone determines drug types and quantities when imposing sentences short of the statutory maximum"). Petitioner is not, therefore, entitled to habeas relief for this claim.

### E.  Prosecutor's Comments During Closing Argument

Petitioner next argues that prosecutorial misconduct deprived him of a fair trial. Specifically, he complains that the prosecutor, in her closing statement, made two prejudicial remarks against him and made improper remarks concerning the testifying

police officers' credibility.[7]

On habeas review, the question this court must address is not whether the comments were improper, but whether they "so infected . . . the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Thus, even if the comments were improper, the analysis does not end there; instead, the court looks at the remarks in light of the entire record to determine if the Petitioner was deprived of a fair trial. See *United States v. Haws*, No. 98 C 4707, 2001 WL 300306, at *7 (N.D. Ill. Mar. 28, 2001)(citing *United States v. Gonzalez*, 933 F.2d 417, 430 (7th Cir. 1991)).

In Petitioner's case, the Illinois Appellate Court found that Clay "was not substantially prejudiced by the prosecutor's two brief and isolated comments in reference to children and drugs." *People v. Clay*, No. 1-95-1160, slip op. at 5 (Ill. App. Ct. Oct. 23, 1996). In so finding, the court cited to *People v. Thompkins*, 121 Ill. 2d 401, 445, 521 N.E.2d 38, 57 (1988) and to *People v. Smothers*, 55 Ill. 2d 172, 176, 302 N.E. 2d 324, 327 (1974), explaining, "[a] prosecutor is allowed a great deal of latitude in making the closing argument," and the "trial court has sound discretion in determining the propriety of a closing argument." *Id.* at 4. As the court further explained:

> Even though we express concern about the danger of a prosecutor's passing comments during closing argument which may have tainted an

---

[7]     Clay also complains that the prosecutor stated that the $175 he had on him at the time of the arrest was "drug money," even though he did not have prior drug dealing arrests and even though this was not a large sum of money. Petitioner's First Amended Petition, at 6. Petitioner did not, however, raise this claim on direct review. For this reason, this court will not consider this comment here.

> otherwise fair trial, we ultimately fail to find that the prosecutor's remarks constituted a material factor in the conviction of defendant, in light of the overwhelming evidence against him. Moreover, the trial court did sustain defendant's objections to these comments during closing arguments. Thus, we conclude that defendant was not substantially prejudiced by the prosecutor's comments.

*Id* at 5. The court also refused to address Clay's contentions that the prosecutor's comments made during rebuttal enhanced the testimony of the police officers, explaining that the argument was waived because Clay did not allege the error in his post-trial motion and thus he did not preserve the issue for review. *Id.*

Petitioner has not shown how this decision was contrary to or involved an unreasonable application of federal law, nor does this court believe it was. Additionally, where, as here, there were two eye-witnesses who testified that they saw Petitioner engaged in a drug deal, there is nothing to indicate that, but for the prosecutor's comments, the jury would not have found Clay guilty. Thus, the court cannot say that the prosecutor's closing argument deprived Clay of a fundamentally fair trial warranting habeas relief. *See Darden*, 477 U.S. at 181.

## F.    Prior Conviction Used as an Aggravating Factor

Petitioner next challenges the trial judge's consideration at sentencing of Petitioner's prior conviction from 1972. Specifically, in his first amended petition, Clay challenges the fact that the trial judge enhanced his sentence based on the conviction. In his amended petition, he challenges both the fact that the prior conviction was considered at sentencing and also the fact that the prior conviction was not "alleged in the indictment," as Petitioner claims is mandated by *Apprendi*.

18

As has already been explained, *Apprendi* does not apply to Petitioner's case because he did not receive a sentence greater than the statutory maximum allowed for his crime. The court notes, however, that even if he had received such a sentence, *Apprendi* still would not apply. In *Apprendi*, the Supreme Court held that:

> [A]ny fact *other than the fact of a prior conviction* that increases the penalty for an offense beyond the statutory maximum penalty for that offense is an element of the crime and so must be submitted to the jury and proved beyond a reasonable doubt.

*Apprendi*, 120 S. Ct. at 2362-63 (emphasis added). Thus, *Apprendi* specifically omitted prior convictions from those elements that have to be submitted to a jury and alleged in the indictment.

The court turns to Petitioner's claim that the trial court should not have been allowed to consider the conviction in enhancing his sentence. As has already been explained, the Illinois Appellate Court, deciding this issue on direct review, pointed out that "Defendant was not sentenced to an extended term sentence as he suggests." *People v. Clay*, No. 1-95-1160, slip op. at 6 (Ill. App. Ct. Oct. 23, 1996). Instead, the court pointed out that "a prison term of 20 years is well within the statutory range of 12 to 50 years for this offense." The court noted, as well, that:

> The trial judge considered defendant's prior 1972 conviction as an aggravating factor pursuant to section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2 (West 1992)). We cannot remand for a new sentencing hearing nor reduce the sentence merely because we would have reweighed the factors differently.

*Id.*

Similarly, a federal court will not generally review a sentence imposed by a state

court if that sentence falls within the statutorily prescribed range. *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994); *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997). A federal court will only review a Petitioner's showing "that the sentencing court lacked jurisdiction to impose this term or committed a constitutional error making the sentence fundamentally unfair." *Koo*, 124 F.3d at 875. "A sentence violates the Constitution if it is extreme and grossly disproportionate to the crime." *Id.*

Clay's sentence falls within the statutory range for possession with intent to deliver cocaine and, under the Illinois statute governing aggravating factors, the court was allowed to consider Petitioner's prior conviction in determining his sentence. Petitioner has not, therefore, shown that the court committed any constitutional error in imposing the sentence or that the sentence was unreasonable in light of the nature of the offense. As such, Petitioner is not entitled to habeas relief on this claim.

## G.    Ineffective Assistance of Counsel

Lastly, Petitioner claims that his trial counsel was ineffective for failing to impeach the police officers at trial and for failing to call certain witnesses to testify at trial. Petitioner did not, however, raise this claim in the state courts either on direct or collateral appeal.

A federal court cannot reach the merits of a habeas corpus petition unless Petitioner can show that he has exhausted his state remedies and avoided procedural default. *Moleterno v. Nelson*, 114 F.3d 629, 633-34 (7th Cir. 1997); *see Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995)(claims which are raised for the first time at the

20

federal level on habeas review cannot be reviewed by the federal courts). The procedural default inquiry focuses on whether the petitioner's federal claims were "fairly presented" to the state courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Procedural default occurs in one of two ways: (1) when a petition to the federal court includes claims that the petitioner failed to raise at the state level, *see Momient-El v. DeTella*, 118 F.3d 535, 540-41 (7th Cir. 1997); or (2) when the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement, *see Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992). These requirements are "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman*, 501 U.S. at 731.

In cases where a petitioner has failed to raise a claim in the state court that he raises in his habeas petition, federal courts may review those defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a constitutional violation has resulted in the conviction of one who is actually innocent. *See Edwards v. Carpenter*, 529 U.S. 446, 120 S. Ct. 1587, 1591 (2000); *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Because Petitioner failed to raise his ineffective assistance of counsel claim at any time in state court proceedings and it is now too late to do so, he has procedurally

defaulted on this claim. In addition, Petitioner has failed to allege any cause for failing to raise this claim before this time. He does not allege ineffective assistance of counsel at the appellate level for failing to raise this claim, nor did he try to raise it himself in his original post-conviction petition. Nor does he explain how refusal to consider this defaulted claim would result in a "fundamental miscarriage of justice." Therefore, the court is barred from hearing this claim on the merits.

## CONCLUSION

For the foregoing reasons, Clay's motion for leave to file an amended petition (Doc. No. 16-1, 16-2), is granted. Clay's motion for appointment of counsel is denied as moot (Doc. No. 18) in light of this court's decision to deny Clay's petition for writ of habeas corpus (Doc. No. 17 and Doc. No. 1).

ENTER:

Dated: August 14, 2001

REBECCA R. PALLMEYER
United States District Judge